NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0257n.06

**No. 11-1627**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="11"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>SERGIO VARGAS-GUTIERREZ,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Defendant-Appellant.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

FILED

**Mar 07, 2012**

LEONARD GREEN, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

Before: COLE and STRANCH, Circuit Judges; CARR, District Judge.[*]

**JANE B. STRANCH, Circuit Judge**. Defendant Sergio Vargas-Gutierrez appeals the district court's (1) denial of his motion to withdraw his guilty plea and (2) imposition of a sentencing enhancement for obstruction of justice. Finding no clear error in the district court's determinations, we **AFFIRM**.

## I. BACKGROUND

On October 6, 2010, Vargas-Gutierrez was named in a two-count indictment for conspiracy to distribute and possess with intent to distribute five or more kilograms of cocaine, and possession of a firearm in furtherance of a drug trafficking crime. On November 30, 2010, he pled guilty to the conspiracy charge in exchange for the Government's oral promise to dismiss the firearm offense. The plea hearing proceedings were translated to and from Spanish, Vargas-Gutierrez's primary

_____

[*]The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

No. 11-1627
*USA v. Sergio Vargas-Gutierrez*

language. During the hearing, the court asked Vargas-Gutierrez several questions about whether his

participation in the conspiracy was voluntary:

> THE COURT: Mr. Vargas-Gutierrez, did you participate in this conspiracy of your own free will?
> THE DEFENDANT: Yes.
> THE COURT: And no one was forcing you to do this?
> THE DEFENDANT: No.
> THE COURT: Did you expect to get anything out of it yourself?
> THE DEFENDANT: No.
> THE COURT: Okay. Did you expect any money or any cocaine for yourself?
> THE DEFENDANT: He just paid me for having it there at my house.
> THE COURT: All right. So he paid you some money to use your house basically?
> THE DEFENDANT: Yes.
> THE COURT: All right. Nobody was putting a gun to your head or forcing you or threatening you in any way to do this?
> THE DEFENDANT: No.

The court also asked specific questions about Vargas-Gutierrez's role in the conspiracy and gave a

detailed account of the implications of his plea and how the process would continue after the

hearing:

> THE COURT: All right. Because if I go ahead and accept your guilty plea today, then there will not be a trial next week, there will be no further presumption of innocence, those protections will be gone, and the only thing left to do in your case will be to sentence you. And that sentence will include at least 10 years in prison. Do you understand that?
> THE DEFENDANT: Okay.
> THE COURT: Okay? Do you have any questions about that?
> THE DEFENDANT: No.

Vargas-Gutierrez did not express any confusion or reluctance during the hearing or make any

suggestion that he sold drugs under duress. At the conclusion of the hearing, the court found that

"Mr. Vargas-Gutierrez is tendering the guilty plea freely and voluntarily."

2

The Probation Office submitted a Presentence Investigation Report ("PSR") on January 19, 2011. Despite his guilty plea, the PSR declined to apply a two-level reduction for acceptance of responsibility because Vargas-Gutierrez "minimized his role and involvement" and "related he was forced to participate . . . despite several opportunities to withdraw from the conspiracy." Vargas-Gutierrez objected on the grounds that he was improperly denied this reduction as well as a reduction for a mitigating role. His sentencing memorandum included his insistence of being threatened into participating in the conspiracy as well as the fact that he had maintained this position to his attorney, the prosecutor, and the probation officer (although it also notes that "everyone expressed disbelief" to his claims during his pre-plea proffer). The Government responded on February 25 in support of the PSR. On March 1, the court issued a notice stating Vargas-Gutierrez's allegation of coercion "raises not only a question of acceptance credit, but also the issue of whether an obstruction enhancement is warranted." The notice instructed the parties to "be prepared to address that at the sentencing hearing," scheduled for the same day.

Rather than address this issue at the hearing, Vargas-Gutierrez's attorney instead orally notified the court that her client wished to withdraw his guilty plea because "he maintains that he's not guilty" and did not fully understand the hearing in which he pled guilty due to translation problems and his inability to "understand subtle nuances" of the law. The court appointed new counsel and held a hearing on May 4 (hereinafter "Motion/Sentencing Hearing"), during which Vargas-Gutierrez testified under oath that he had been forced to participate in the conspiracy due to death threats against himself and his family. He further testified that, although he had always maintained his innocence to his attorney and the prosecutor, he pled guilty because "they said that

I had to plead guilty and they would drop some charges against me." He did not mention the alleged duress during the plea hearing because his "attorney and the prosecutor said that they didn't want to listen to me say before the judge that I had been threatened." Vargas-Gutierrez did not call his attorney, family members, or any other witnesses at the Motion/Sentencing Hearing in support of these claims. The Government called several witnesses who contradicted Vargas-Gutierrez's testimony.

The trial court denied Vargas-Gutierrez's request to withdraw his guilty plea after finding his testimony to be incredible and "belied by overwhelming evidence to the contrary." This evidence included Vargas-Gutierrez's statements at the earlier hearing, statements on other occasions, testimony by the witnesses, his strained relationship with his family, the nature of the drug transactions, and the fact that loaded weapons were found at his home. As the court transitioned to sentencing during the Motion/Sentencing Hearing, it relied on these same conclusions in imposing a sentencing enhancement for obstruction of justice. Ultimately, the court calculated a Guideline's range of 235 to 293 months but varied downward "modestly" to impose a sentence of 210 months to avoid sentencing disparities and because "it's his first offense in the drug world." Vargas-Gutierrez filed a timely appeal, challenging only the court's refusal to allow him to withdraw his guilty plea and the imposition of the obstruction of justice enhancement.

## II. DISCUSSION

### A. Withdrawal of Guilty Plea

This Court reviews the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008). "A district court

abuses its discretion where it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Id.* (internal quotation marks and citation omitted). "Under Federal Rule of Criminal Procedure 11(d), a defendant may withdraw his guilty plea if he can show a fair and just reason for requesting the withdrawal." *United States v. Wynn*, 663 F.3d 847, 849 (6th Cir. 2011). As the movant, Vargas-Gutierrez had the burden of establishing that his motion to withdraw his plea should be granted. *United States v. Goddard*, 638 F.3d 490, 494 (6th Cir. 2011). This Court looks to the following seven factors in assessing whether a defendant established a "fair and just" reason under the totality of the circumstances:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Wynn*, 663 F.3d at 849-50 (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)), *abrogated on other grounds by United States v. Caseslorente*, 220 F.3d 727, 734-35 (6th Cir. 2000). The rule allowing guilty pleas to be withdrawn is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Goddard*, 638 F.3d at 493-94 (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)).

As Vargas-Gutierrez observes, the majority of the factors "can be handled simultaneously because [his] explanations are inextricably intertwined." In sum, Vargas-Gutierrez argues that he

was misled by his attorney and lacked sufficient knowledge of the legal system and the English language to understand he was forfeiting his right to later argue he was not guilty by reason of duress. The record reflects that he primarily speaks Spanish, received only six years of education in Mexico, and has had only one prior experience with the criminal justice system. However, we see nothing to indicate that he was so lacking in sophistication as to be unable to understand the clear and thorough statements made by the court during the plea proceeding, as reviewed above, which were translated for his benefit. Further, a narcotics detective testified that Vargas-Gutierrez "seemed to converse pretty decent" in English in several secret recordings with a cooperative witness who did not speak Spanish and who said he had been purchasing drugs from Vargas-Gutierrez for nearly two years.

The district court made a finding during the Motion/Sentencing Hearing that Vargas-Gutierrez's testimony, which constitutes the only affirmative evidence that he was misled into pleading guilty or committed his crimes under duress, was incredible. This determination was not clearly erroneous in light of the testimony at the Motion/Sentencing Hearing and other evidence in the record. *See United States v. Dixon*, 479 F.3d 431, 435-36 (6th Cir. 2007) (noting that findings of fact based on a credibility determination are not typically subject to reversal on appellate review).

The district court also did not clearly err in finding that Vargas-Gutierrez "panicked and decided that he was going to roll out a [false] story" after learning he was facing fifteen to twenty years' imprisonment instead of the ten for which he was hoping. Although Vargas-Gutierrez may have maintained his innocence throughout the proceedings—other than, of course, at his plea hearing—the timing of his motion to withdraw his guilty plea on the same day the court indicated

it was prepared to deny an acceptance of responsibility reduction and apply an obstruction of justice enhancement suggests a "tactical decision" rather than an "unsure heart and confused mind." *Goddard*, 638 F.3d at 493-94.

As the district court recognized, believing Vargas-Gutierrez's testimony at the Motion/Sentencing Hearing would also require a finding that he had committed perjury when, under oath at the plea hearing, he acknowledged the truth of the factual allegations against him. Specifically, Vargas-Gutierrez agreed that he had both an agreement and an intent to distribute cocaine with another person, and gave no indication of involuntariness. "A motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Shah*, 453 F.3d 520, 523 (D.C. Cir. 2006) (quoting *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005)). Here, the district court found that the explanation itself was perjury. "Lying to a court is not a 'fair and just reason,' Fed. R. Crim. P. 11(d)(2)(B), for allowing a plea to be withdrawn." *Id.* (citing *Peterson*, 414 F.3d at 827); *see also United States v. Soto*, 660 F.3d 1264, 1266 (10th Cir. 2011) ("Must a district court allow a defendant to withdraw his guilty plea—even when the request is based on a lie? Unsurprisingly, we hold the answer is no."). We conclude that the court did not abuse its discretion in denying the motion. *See Goddard*, 638 F.3d at 495.[1]

---

[1]Vargas-Gutierrez's allegations that his first attorney did not properly advise him concerning his plea agreement may be raised separately as an ineffectiveness of assistance of counsel claim. *See Wynn*, 663 F.3d at 850-51.

**B.**     **Obstruction of Justice Enhancement**

Vargas-Gutierrez submits that the district court erred in granting a two-level enhancement

for obstruction of justice, which applies when "the defendant willfully obstructed or impeded, or

attempted to obstruct or impede, the administration of justice with respect to the investigation,

prosecution, or sentencing of the instant offense of conviction." USSG § 3C1.1 (2009). While we

review the district court's factual determinations concerning the application of this enhancement for

clear error, we review the decision that a defendant's conduct amounted to obstruction of justice

under the Guidelines, and the application of that enhancement, de novo. *United States v. Sweet*, 630

F.3d 477, 480 (6th Cir. 2011).[2] "In reviewing the § 3C1.1 enhancement, we evaluate [the]

defendant's testimony and statements in a light most favorable to the defendant." *United States v.*

*Thomas*, 272 F. App'x 479, 487 (6th Cir. 2008) (quoting *United States v. Head*, 927 F.2d 1361, 1372

(6th Cir. 1991)) (internal quotation marks omitted).

Although not discussed by the parties, we observe that the district court sufficiently followed

the procedure we established for application of USSG § 3C1.1 in *United States v. Sassanelli*, 118

F.3d 495, 501 (6th Cir. 1997). *See United States v. May*, 568 F.3d 597, 607 (6th Cir. 2009). Under

this procedure, the district court must (1) identify perjurious statements the defendant made on the

stand, (2) find that the defendant made these statements wilfully, and (3) find that these false

_____

[2]We recognize that this Court has previously applied a clear error standard "where the sole
issue before the district court is a fact-bound application of the guideline provisions." *United States
v. Jackson-Randolph*, 282 F.3d 369, 390 (6th Cir. 2002). "We need not decide between the two
standards here because the district court's decision is properly upheld under either." *United States
v. Carter*, 510 F.3d 593, 597 n.1 (6th Cir. 2007).

statements were material. *Id.* In ruling on the obstruction of justice enhancement, the court referred back to its earlier well-supported findings that Vargas-Gutierrez was untruthful during essentially all of his testimony with respect to the circumstances of his guilty plea and his participation in the drug conspiracy. As discussed above, those findings were not clearly erroneous even when viewed in the light most favorable to Vargas-Gutierrez and despite his continued insistence to this Court in his appellate brief that "his testimony was completely truthful." When explaining the decision to deny the motion to withdraw the guilty plea, "the district judge identified specific instances of conflicting testimony and pointed to the specific portions of [Vargas-Gutierrez's] testimony that he deemed perjurious." *Thomas*, 272 F. App'x at 488.

Referencing Vargas-Gutierrez's false statements, the district court found "the lies are conscious, intentional, and repeated." *See id.* at 487 (quoting *United States v. Dunnigan,* 507 U.S. 87, 94 (1993)) (noting obstruction enhancement applies when false testimony given "with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory"). This finding is also not clearly erroneous.

Although perhaps obvious in context, the district court did not expressly rule that each perjured statement was "material."[3] However, we need not remand when, as here, "we may answer such a question of law ourselves." *Id.* (citing *United States v. Seymour*, 38 F.3d 261, 264 (6th Cir. 1994)). Evidence is considered material in this context when, "if believed, would tend to influence

---

[3]The court came close to a materiality determination when it stated that the purpose of the lies was "to sustain the theory that he was forced to participate in the underlying conspiracy and at least suggest[] that he entered that guilty plea with something less than the full free will . . . he indicated to me he had at the time."

or affect the issue under determination." USSG 3C1.1 cmt. n.6. Vargas-Gutierrez's testimony at the Motion/Sentencing Hearing clearly meets this standard because, if believed, it would have directly affected several of the factors the district court used to assess whether to grant his motion to withdraw his guilty plea. *See Wynn*, 663 F.3d at 849.

Vargas-Gutierrez raises two arguments to escape the obstruction of justice enhancement. First, he suggests that imposing this enhancement led to a sentence that was "greater than necessary" because it "amounts to a double punishment for the exact same conduct" for which he was denied the acceptance of responsibility reduction under § 3E1.1. However, we have recognized that the Guidelines expressly contemplate that "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility" except in "extraordinary cases." *United States v. Paul*, 551 F.3d 516, 528 (6th Cir. 2009) (quoting USSG § 3E1.1 cmt. n.4); *see, e.g.*, *Soto*, 660 F.3d at 1268-69 (upholding imposition of obstruction enhancement and denial of acceptance reduction for false testimony in withdraw-of-plea hearing). It is notable that the PSR, while denying the acceptance of responsibility deduction, did not recommend an obstruction of justice enhancement. The court imposed the enhancement because of Vargas-Gutierrez's testimony at the Motion/Sentencing Hearing, not his previous statements, noting "there is a penalty for lying in a sentencing proceeding, as the Court has found the defendant did here."

Second, Vargas-Gutierrez suggests that conduct relating to a motion to withdraw a guilty plea cannot implicate USSG § 3C1.1 because such a motion does not obstruct "investigation, prosecution, or sentencing." We disagree. "In the legal sense, a prosecution terminates only when sentence is

10

imposed." *United States v. Roche*, 321 F.3d 607, 610 (6th Cir. 2003) (quoting *Bradley v. United States*, 410 U.S. 605, 609 (1973)); *see Soto*, 660 F.3d at 1268-69 (perjury during change-of-plea hearing implicates prosecution and sentencing). Accordingly, we hold that the district court did not err in imposing an enhancement for obstruction of justice due to testifying falsely at the Motion/Sentencing Hearing.[4]

### III. CONCLUSION

For the reasons above, we **AFFIRM** the district court's denial of Vargas-Gutierrez's motion to withdraw his guilty plea as well as the sentence imposed.

---

[4]Although the Application Notes provide that the enhancement should not be applied due to a defendant's denial of guilt, there is an exception when that denial "constitutes perjury." USSG § 3C1.1 cmt. n.2; *see also id.* cmt. n.4(f) (stating adjustment applies to "providing materially false information to a judge").